[No. S034603. June 30, 1994.]

JANET C. MANGINI, Plaintiff and Appellant, v.
R. J. REYNOLDS TOBACCO COMPANY et al., Defendants and
Respondents.

1058

COUNSEL

Milberg, Weiss, Bershad, Specthrie & Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, William S. Lerach, Leonard B. Simon, Eric A. Isaacson, Alan M. Mansfield, Artie Baran, Frank J. Janecek, Jr., Daren J. Quinn, Bushnell, Caplan & Fielding, Alan M. Caplan, Philip Neumark and April M. Strauss for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Albert Norman Shelden, Deputy Attorney General, Robert Chartoff, Keker, Brockett & Van Nest, Gary M. Cohen and Daralyn J. Durie as Amici Curiae on behalf of Plaintiff and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Martin R. Glick, H. Joseph Escher III, Pamela T. Johann, Jones, Day, Reavis & Pogue and John L. Strauch for Defendants and Respondents.

## OPINION

**ARABIAN, J.**—This lawsuit challenges an advertising campaign for Camel cigarettes featuring a cartoon character called Old Joe Camel. The campaign, it is claimed, improperly targets minors, and seeks to make cigarette smokers of them. The issue before us is whether the action is preempted by federal law. Its resolution requires us to interpret and apply the recent decision of *Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. __ [120 L.Ed.2d 407, 112 S.Ct. 2608], which itself interpreted the Federal Cigarette Labeling and Advertising Act (15 U.S.C. § 1331 et seq.).

We conclude that the action, as defined and limited by the Court of Appeal, is not preempted, and affirm the judgment of the Court of Appeal.

### I. PROCEDURAL HISTORY

Plaintiff Mangini sued R. J. Reynolds Tobacco Company and others (hereafter collectively Reynolds) for injunctive relief, asserting two causes of action, one for "Unlawful, Unfair Business Practices," and one for "Unjust Enrichment and Imposition of Constructive Trust."

The complaint alleges, among other things, the following: About 75 percent of all adult smokers become addicted to tobacco before their 18th birthdays. Tobacco advertising causes children to become addicted. Since 1988, Reynolds has used a cartoon character called Old Joe Camel in its advertising campaign in order to attract teenage smokers. It has disseminated products such as matchbooks, store exit signs, scrip, mugs, and soft drink can holders advertising Camel cigarettes. The advertising has been effective in targeting adolescents. As a result of the campaign, the number of teenage smokers who choose Camel cigarettes has risen from 0.5 percent in 1988 to between 25 and 33 percent in 1992. Teenage smokers accounted for about $476 million of Camel sales in 1992 as compared with $6 million in 1988. " 'Old Joe, that hip cartoon camel used to advertise Camel cigarettes,' " the complaint alleges, " 'is now as familiar to young children as Mickey Mouse, and apparently is enticing thousands of teens to smoke that brand,' " and has caused Camel's popularity with teenagers to " 'surge[] 66-fold.' "

The first cause of action alleges that defendants "caused the advertisements of Camel cigarettes without any warning that cigarettes pose a health

hazard" in violation of the Federal Cigarette Labeling and Advertising Act, and that this constitutes an unlawful and unfair business practice under Business and Professions Code section 17200 et seq. The second cause of action alleges that defendants are being unjustly enriched by the advertising campaign.

Six months after the complaint was filed, the United States Supreme Court decided *Cipollone* v. *Liggett Group, Inc.*, *supra*, 505 U.S. __ [120 L.Ed.2d 407, 112 S.Ct. 2608]. Two weeks thereafter, Reynolds moved for summary judgment, contending that the action was preempted by the Federal Cigarette Labeling and Advertising Act, 15 United States Code section 1331 et seq., as interpreted in that decision. The trial court agreed, and granted the motion. Plaintiff appealed.

The Court of Appeal reversed. It found that the two causes of action pleaded in the complaint were indeed preempted by federal law, which plaintiff does not now challenge, but it concluded that plaintiff should have been granted leave to amend the complaint. On appeal, plaintiff argued two additional theories of unfair business practice based upon facts already alleged in the complaint. The Court of Appeal found that one of the theories was preempted, a finding also not now challenged. The other theory, the one at issue here, "is that the Old Joe Camel advertising campaign targets minors for the purpose of inducing and increasing their illegal purchases of cigarettes."

Preliminarily, the court found the targeting minors theory to be cognizable under Business and Professions Code section 17200. "California's statutory law of unfair competition (Bus. & Prof. Code, § 17200 et seq.) authorizes actions for injunctive relief (Bus. & Prof. Code, § 17203) by certain state and local officers and persons acting for the interests of themselves or the general public (Bus. & Prof. Code, § 17204). Unfair competition includes 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . .' (Bus. & Prof. Code, § 17200.)" The court found that cigarette advertising targeting minors was "unfair" within the meaning of this statute.

It stated, "the targeting of minors in cigarette advertising offends public policy as established by statute. In California, it is unlawful to sell or furnish cigarettes to persons under the age of 18 years, and it is unlawful for minors to purchase or receive cigarettes. (Pen. Code, § 308, subds. (a), (b).) This reflects a statutory policy of protecting minors from addiction to cigarettes. In an analogous context—a statutory proscription against nonsale public distribution of smokeless tobacco and cigarettes (Health & Saf. Code,

§ 25967)—the Legislature has declared its intent that 'keeping children from beginning to use tobacco products in any form . . . shall be among the highest priorities in disease prevention for the State of California.' (Health & Saf. Code, § 25967, subd. (a)(11).) Cigarette advertising directed to minors contravenes the statutory policy of keeping children from starting on the road to tobacco addiction."

In addition, the court noted that "the targeting of minors is oppressive and unscrupulous, in that it exploits minors by luring them into an unhealthy and potentially life-threatening addiction before they have achieved the maturity necessary to make an informed decision whether to take up smoking despite its health risks." It also found that "a persuasive argument can be made that the targeting of minors causes substantial physical injury to them. In the statutory proscription against nonsale public distribution of smokeless tobacco and cigarettes, the Legislature has found and declared the following: 'Tobacco product advertising and promotion are an important cause of tobacco use among children.' (Health & Saf. Code, § 25967, subd. (a)(9).) 'The earlier a child begins to use tobacco products, the more likely it is that the child will be unable to quit.' (Health & Saf. Code, § 25967, subd. (a)(5).) 'Smoking is the single most important source of preventable disease and premature death in California.' (Health & Saf. Code, § 25967, subd. (a)(1).) Mangini's complaint alleges that teenage smokers accounted for $476 million of Camel cigarette sales in 1992 as compared with $6 million in 1988 at the onset of the Old Joe Camel advertisements, implicitly suggesting such advertisements have harmed a great many teenagers by luring them into extended use of and addiction to tobacco products."

The court went on to find that this cause of action was not preempted by the Federal Cigarette Labeling and Advertising Act. Finally, it held that although this theory was imperfectly pleaded in the complaint, the motion for summary judgment was equivalent to a motion for judgment on the pleadings, and the theory was supported by the factual allegations; therefore, the trial court should have granted leave to amend the complaint to allege this cause of action. The court thus reversed the judgment and remanded the cause "with directions to the superior court to give Mangini an opportunity to amend her complaint."

Reynolds petitioned for review, contending that the cause of action is preempted by federal law, and that the Court of Appeal erred procedurally in finding that plaintiff should have been granted leave to amend the complaint. Neither in the Court of Appeal nor in the petition for review did Reynolds challenge the holding that the targeting minors theory states a valid cause of action under state law. We granted review limited to the merits of the preemption issue.

## II.

### Discussion

A. *Judicial Notice*

The parties have filed eight separate requests for judicial notice, five by Reynolds, three by plaintiff. We grant some of the requests and deny the rest.

■ Although a court may judicially notice a variety of matters (Evid. Code, § 450 et seq.), only *relevant* material may be noticed. "But judicial notice, since it is a substitute for proof [citation], is always confined to those matters which are relevant to the issue at hand." (*Gbur* v. *Cohen* (1979) 93 Cal.App.3d 296, 301 [155 Cal.Rptr. 507].) "While Evidence Code, section 451, provides in mandatory terms that certain matters designated therein must be judicially noticed, the provisions contained therein are subject to the qualification that the matter to be judicially noticed must be relevant (Evid. Code, §§ 350, 450)", as well as "qualified by Evidence Code, section 352 . . . ." (*Mozetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751]; see also *Del Mar Terrace Conservancy, Inc.* v. *City Council* (1992) 10 Cal.App.4th 712, 744 [12 Cal.Rptr.2d 785]; *ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 313, fn. 4 [262 Cal.Rptr. 773]; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 47.1, p. 1749 ["Matters otherwise subject to judicial notice must be relevant to an issue in the action."].) We therefore "decline" to judicially notice material that "has no bearing on the limited legal question at hand." (*People* v. *Stoll* (1989) 49 Cal.3d 1136, 1144, fn. 5 [265 Cal.Rptr. 111, 783 P.2d 698].)

Plaintiff asks us to judicially notice a 1994 report of the United States Surgeon General, entitled "Preventing Tobacco Use Among Young People," and a 1994 report to the California Department of Health Services entitled "Tobacco Use in California." Both are irrelevant to the preemption question here, which interprets a 1969 federal statute. Moreover, to the extent plaintiff asks us to notice the truth of matters asserted in those documents, and not merely their existence, Reynolds has stated a valid objection. ■ While courts may notice official acts and public records, "we do not take judicial notice of the truth of all matters stated therein." (*Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 403 [38 Cal.Rptr. 183]; accord, *People* v. *Long* (1970) 7 Cal.App.3d 586, 591 [86 Cal.Rptr. 590].) "[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced therefrom, since in many instances what is being noticed, and thereby established, is no

more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow therefrom." (*Cruz* v. *County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].) We therefore deny plaintiff's first two requests for judicial notice.

Concurrently with two of its briefs, Reynolds asked us to notice materials relating to legislative history of the statute at issue. Although a simple citation to some of the readily available published material, such as excerpts from the United States Code Congressional and Administrative News, would have sufficed, we grant those requests, consisting of the first three items of Reynolds's original request, and the second item of its first supplemental request. (*Post* v. *Prati* (1979) 90 Cal.App.3d 626, 634 [153 Cal.Rptr. 511]; Evid. Code, § 452, subd. (c).)

Reynolds also requests notice of a 1992 letter from a number of state attorneys general to a United States senator urging repeal of 15 United States Code section 1334(b), and a newspaper account of that letter. A letter by persons seeking repeal of a statute, written long after its enactment, is irrelevant to the interpretation of that statute. Moreover, the existence of the newspaper article is irrelevant, and the truth of its contents is not judicially noticeable. We therefore deny those judicial notice requests, consisting of the fourth item of Reynolds's original request, and the first item of its first supplemental request.

Reynolds further asks us to notice an excerpt from the same report of the United States Surgeon General that plaintiff asks us to notice, legislative history materials regarding a 1990 bill introduced in the California Legislature, and a complaint recently filed in a different action in Washington State. Those items, too, are irrelevant to the limited issue here. The requests, consisting of the fifth through eleventh items of Reynolds's original request, and the first item of Reynolds's second supplemental request, are denied.

After briefing was concluded, a few weeks before oral argument, Reynolds asked us to notice a federal court decision that was not cited in the briefs. That decision aids Reynolds very little, although it is arguably relevant. ██ Relevant federal decisional law is generally subject to judicial notice. (Evid. Code, § 451, subd. (a).) However, Reynolds could have, and should have, cited the decision in the briefs, as it cited other federal decisions. Requests for judicial notice should not be used to "circumvent[]" appellate rules and procedures, including the normal briefing process. (*People* v. *Webster* (1991) 54 Cal.3d 411, 428, fn. 4 [285 Cal.Rptr. 31, 814 P.2d 1273] [judicial notice may not be used to circumvent the prohibition against citing unpublished opinions].) Asking that authority be judicially noticed

instead of citing and discussing it in a brief gives the parties no orderly opportunity to argue the relevance of that authority or to distinguish it. The request, consisting of the second item of Reynolds's second supplemental request, is denied on that basis.

Two days before oral argument, Reynolds asked us to notice a newspaper article regarding a reported action by the Federal Trade Commission. The existence of the article is irrelevant, and the truth of its contents is not judicially noticeable. Reynolds's third supplemental request is therefore denied.

On the day of oral argument, both sides asked us to notice documents related to an action of the Federal Trade Commission. The commission "closed" an investigation into the "Joe Camel" advertising campaign, but stated that its action "is not to be construed as a determination that a violation may not have occurred . . . ." This action is irrelevant to the interpretation of the preemption statute; these final requests are therefore denied.

### B. *Preemption*

The only cause of action for unfair business practices that survived Court of Appeal scrutiny, and thus the only one before us, is that "the Old Joe Camel advertising campaign targets minors for the purpose of inducing and increasing their illegal purchases of cigarettes." It is unlawful in California to sell or furnish cigarettes to minors, and for minors to buy them. (Pen. Code, § 308, subds. (a) & (b).) ■ The narrow issue before us is thus whether, notwithstanding this prohibition against *sale*, attempts in California to regulate or prohibit *advertisement* of cigarettes to minors are preempted by federal law. We find they are not, although for somewhat different reasons than those stated by the Court of Appeal.

Reynolds relies on the Federal Cigarette Labeling and Advertising Act, enacted in 1965 (15 U.S.C. § 1331 et seq.), which contains an express preemption provision. As amended by the Public Health Cigarette Smoking Act of 1969 (hereafter sometimes the 1969 Act), 15 United States Code section 1334(b) (hereafter section 1334(b)) now provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."

The United States Supreme Court interpreted the scope of section 1334(b) in *Cipollone* v. *Liggett Group, Inc., supra*, 505 U.S. __ [120 L.Ed.2d 407,

112 S.Ct. 2608] (*Cipollone*). There, plaintiff sued three cigarette manufacturers for common law damages resulting from the death of Rose Cipollone from lung cancer. Several theories of liability were alleged, including failure to warn of the health consequences of smoking, breach of express warranty, fraudulent misrepresentation, and conspiracy to misrepresent or conceal material facts. The defendants contended the action was preempted. The high court analyzed the issue under both the preemption clause of the 1965 legislation and the current version of section 1334(b), only the latter of which is relevant to this case.

The high court first stated the applicable general principles.[1] The " ' "purpose of Congress is the ultimate touchstone" ' of pre-emption analysis." (*Cipollone, supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 422, 112 S.Ct. at p. 2617].) Because Congress enacted an express preemption provision, it implied that matters beyond the reach of that provision are not preempted. Hence, a cause is preempted by the Federal Cigarette Labeling and Advertising Act only if it is covered by the express language of section 1334(b). (*Id.* at p. __ [120 L.Ed.2d at pp. 423-424, 112 S.Ct. at p. 2618].) Moreover, "the presumption against the pre-emption of state police power regulations" makes appropriate a "narrow reading" of section 1334(b). (*Ibid.*)

After the court stated the general principles and applied them to the 1965 act, the plurality turned to the current statute, the one at issue here. (*Cipollone, supra*, 505 U.S. at pp. __-__ [120 L.Ed.2d at pp. 424-432, 112 S.Ct. at pp. 2619-2625].) The plurality first rejected the plaintiff's argument that section 1334(b) applied only to "positive enactments" such as state statutes, injunctions or executive pronouncements, and not to common law damages actions. (*Id.* at p. __ [120 L.Ed.2d at p. 426, 112 S.Ct. at p. 2620].) It found "no distinction between positive enactments and common law . . . ." (*Ibid.*)

But, the plurality said, this "does not mean that [section 1334(b)] preempts all common law claims." (*Cipollone, supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 427, 112 S.Ct. at p. 2621].) The court instead "must fairly

---

[1] *Cipollone, supra*, 505 U.S. __ [120 L.Ed.2d 407, 112 S.Ct. 2608], was decided by a fragmented court. The lead opinion by Justice Stevens commanded majority support as to parts I through IV, but was a plurality opinion stating the views of only four Justices as to parts V and VI. Justices Blackmun and Scalia wrote separate concurring and dissenting opinions. Justice Blackmun, speaking for himself and two other Justices, concurred in parts I through IV, but would have found no part of the action preempted. Justice Scalia, speaking for himself and one other Justice, would have found the entire action preempted under the current statute. Discussion of the parts of Justice Stevens's opinion that received majority support will refer to the "court." Discussion of the parts of Justice Stevens's opinion not supported by a majority will refer to the "plurality" opinion. References to the separate opinions will indicate the author. The opinions cite section 1334(b) as section 5(b), referring to the act of which it was a part.

but—in light of the strong presumption against pre-emption—narrowly construe the precise language of [section 1334(b)] and we must look to each of petitioner's common law claims to determine whether it is in fact preempted. [Fn. omitted.] The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." (*Ibid.*)

Applying this test to the specific claims, the plurality reached several conclusions. The claim for "failure to warn" was preempted to the extent it relied on a state law requirement with respect to advertising or promotion. (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 427-429, 112 S.Ct. at pp. 2621-2622].) The claim for "breach of express warranty" was not preempted because the predicate duty is not imposed under state law but rather by the warrantor. (*Id.* at p. __ [120 L.Ed.2d at p. 428, 112 S.Ct. at pp. 2622-2623].) The claim for "fraudulent misrepresentation" based on a theory that the advertising neutralized the effect of the federally mandated warning labels was preempted because it was "predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking," which is "merely the converse of a state law *requirement* that warnings be included in advertising and promotional materials," and is therefore "inextricably related" to the preempted failure to warn theory. (*Id.* at p. __ [120 L.Ed.2d at p. 429-430, 112 S.Ct. at p 2623], italics in original.) Finally, as will be discussed in greater detail below, the "fraudulent misrepresentation" and related conspiracy claim based on a theory of false representation and concealment of material facts were not preempted. (*Id.* at p. __ [120 L.Ed.2d at p. 430, 112 S.Ct. at pp. 2623-2624].)

Justice Blackmun was of the view that no common law damages claims are preempted. (*Cipollone, supra,* 505 U.S. at pp. __-__ [120 L.Ed.2d at p. 432, 112 S.Ct. at pp. 2625-2632] (conc. & dis. opn. of Blackmun, J.).) Justice Scalia was of the view that the entire action was preempted. (*Id.* at pp. __-__ [120 L.Ed.2d at pp. 432-438, 112 S.Ct. at pp. 2632-2638] (conc. & dis. opn. of Scalia, J.).)

Reynolds argues that because its cigarettes are labeled in conformity with federal law, California may not impose any regulation with respect to advertising the cigarettes if the regulation is "based on smoking and health." The prohibition against selling cigarettes to minors is based on underlying health concerns, the argument continues, and therefore the state may not impose any requirement or prohibition with respect to advertisements of cigarettes that target minors.

Reynolds contends, in effect, that if it had used billboards depicting Old Joe Camel stating in huge block letters, "Kids, be the first in your fourth grade class cool enough to smoke Camels"; or, to use the example of the Court of Appeal, "if Reynolds had . . . presented Teenage Mutant Ninja Turtles on children's lunch boxes to promote cigarette smoking," California could do nothing about it, for any attempt to do so would be a requirement or prohibition "based on smoking and health." Only the federal government, Reynolds claims, can prevent advertisements that urge minors to smoke, no matter how blatantly. As we will indicate, Reynolds is incorrect. California may, consistently with section 1334(b), shield minors from cigarette advertising inducing them to smoke.

In conducting the "central inquiry" established in *Cipollone*, we find that this action clearly seeks to impose a requirement or, more specifically, a prohibition under state law with respect to advertising or promoting cigarettes. It seeks to prohibit advertising of cigarettes targeting minors based upon state statutes prohibiting unfair business practices and selling or furnishing cigarettes to minors. The entire issue thus comes down to this: Is the predicate legal duty "based on smoking and health" as that phrase was construed in *Cipollone*? We answer that it is not.

The *Cipollone* plurality's discussion of the fraudulent misrepresentation and conspiracy claims is dispositive. (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 429-430, 112 S.Ct. at pp. 2623-2624].) The claims in *Cipollone* were based on allegations that the defendants "misrepresent[ed] or conceal[ed] material facts concerning the health hazards of smoking." (*Id.* at p. __ [120 L.Ed.2d at p. 431, 112 S.Ct. at p. 2624].) Although concerns about smoking and health ultimately underlie such allegations, the plurality noted that the "predicate of this claim is a state law duty not to make false statements of material fact or to conceal such facts." (*Id.* at p. __ [120 L.Ed.2d at p. 430, 112 S.Ct. at p. 2623].) Such claims are therefore not preempted because they "are not predicated on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." (*Id.* at p. __ [120 L.Ed.2d at p. 430, 112 S.Ct. at p. 2624].)

The plurality found that "Congress intended the phrase 'relating to smoking and health' [language from the original preemption provision but which the court found was "essentially unchanged by the 1969 Act"] to be construed narrowly, so as not to proscribe the regulation of deceptive advertising." (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 430, 112 S.Ct. at p. 2624].) Moreover, the plurality found, "this reading of 'based on smoking and health' is wholly consistent with the purposes of the 1969 Act. State law prohibitions on false statements of material fact do not create

'diverse, nonuniform, and confusing' standards. Unlike state law obligations concerning the warning necessary to render a product 'reasonably safe,' state law proscriptions on intentional fraud rely only on a single, uniform standard: falsity. Thus, we conclude that the phrase 'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements. Accordingly, [plaintiff's] claim based on allegedly fraudulent statements made in [defendants'] advertisements are not pre-empted by 5(b) of the 1969 Act [§ 1331(b)]." (*Ibid.*)

This discussion applies to the instant cause of action. As noted previously, it is unlawful in California to sell cigarettes to minors or for minors to buy them. Advertising aimed at such unlawful conduct would assist vendors in violating the law. The predicate duty is to not engage in unfair competition by advertising illegal conduct or encouraging others to violate the law. In *Cipollone*, the predicate duty—not to deceive—was not "based on smoking and health"; this one is similarly not. "Thus, we conclude that the phrase 'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to" unfairly assist or advertise illegal conduct. (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 431, 112 S.Ct. at p. 2624].) This action is therefore not preempted.

Contrary to Reynolds's argument, this conclusion is wholly consistent with the purposes of the 1969 Act. Congress stated its policy to " 'establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health,' " in part to avoid " 'diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.' " (15 U.S.C. § 1331, as quoted in *Cipollone, supra,* 505 U.S. at p. __, fn. 5 [120 L.Ed.2d at p. 419, 112 S.Ct. at pp. 2614-2615].) State law prohibitions against advertisements targeting minors do not require Reynolds to adopt any particular label or advertisement "with respect to any relationship between smoking and health"; rather, they forbid *any* advertisements soliciting unlawful purchases by minors. The prohibitions do not create " 'diverse, nonuniform, and confusing' standards. Unlike state law obligations concerning the warning necessary to render a product 'reasonably safe,' state law proscriptions" against advertisements targeting minors "rely only on a single, uniform standard": do not target minors. (*Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 431, 112 S.Ct. at p. 2624].)

The Court of Appeal cited various statutes stressing the health consequences of smoking. Reynolds argues this proves that health concerns underlie this action, and it is therefore preempted. Although the Legislature has certainly spoken about the dangers of smoking, we do not rely on those

provisions in finding no preemption, but on Penal Code section 308, which prohibits the sale of cigarettes to minors. The original version of that statute, which prohibited selling to anyone "under the age of sixteen years, any tobacco, or preparation of tobacco," was enacted over a century ago. (Stats. 1891, ch. 70, § 1, p. 64.) This was long before current health concerns, and specifically the health concerns that fuel this lawsuit, arose. The statute is part of a chapter of the Penal Code containing offenses "against good morals." (Pen. Code, pt. 1, tit. 9, ch. 7.) Several of these offenses involve minors. (Pen. Code, §§ 307 [illegal to sell specified food items containing alcohol to those under the age of 21 years], 309 [illegal to admit a minor to a house of prostitution], 310 [illegal for a minor under the age of 16 years to attend a prizefight or cockfight].) This shows that the state's protective role, and not primarily health concerns, motivated the prohibition against selling cigarettes to minors.

Reynolds argues that health concerns are ultimately at issue here; therefore, the predicate duty is not based on unfair business practices, but on smoking and health. This is essentially the preemption argument rejected in *Cipollone*.

Responding to the analogous argument by Justice Scalia that "we should construe fraudulent misrepresentation claims *not* as based on a general duty not to deceive but rather as 'based on smoking and health,'" the *Cipollone* plurality noted that this position "has some conceptual attraction." (*Cipollone, supra*, 505 U.S. at p. __, fn. 27 [120 L.Ed.2d at p. 431, 112 S.Ct. at p. 2624], italics in original.) "However," it responded, "our ambition here is not theoretical elegance, but rather a fair understanding of congressional purpose." (*Ibid.*) To accept this argument "would conflict both with the background presumption against preemption and with legislative history that plainly expresses an intent to preserve the 'police regulations' of the States." (*Ibid.*) The same is true of Reynolds's argument.

As in *Cipollone*, evidence of congressional intent bolsters this conclusion. Indeed, some of the evidence the plurality cited is closely on point: "The Senate Report [regarding the 1969 Act] emphasized that the 'preemption of regulation or prohibition with respect to cigarette advertising is *narrowly phrased to preempt only State action based on smoking and health*. It would in no way affect the power of any State . . . with respect to the taxation or *the sale of cigarettes to minors*, or the prohibition of smoking in public buildings, or *similar police regulations*.' S. Rep. No. 91-566, p. 12 . . . ." (*Cipollone, supra*, 505 U.S. at p. __, fn. 26 [120 L.Ed.2d at p. 431, 112 S.Ct. at p. 2624], second italics added.) If Congress did not intend to affect the power of the state "with respect to" the sale of cigarettes to minors, surely

section 1334(b) does not preempt attempts to prohibit the advertising of cigarettes directed at minors. Reynolds responds to this argument by quoting the next sentence of the same report: "It [preemption] is limited entirely to State or local requirements or prohibitions in the advertising of cigarettes." (1970 U.S. Code Cong. & Admin. News, at p. 2663, reproducing Sen. Rep. No. 91-566, 2d Sess.) This sentence, not quoted in *Cipollone*, does indeed exist, but it does not support Reynolds. Noting that preemption is "limited" to a certain subject does not aid in determining what, within that subject, is actually preempted.

The same Senate Report cited in *Cipollone* states that at hearings held before the Consumer Subcommittee of the Senate Committee on Commerce, and attended by the full committee, the "cigarette manufacturers . . . stated to the committee that with respect to all other advertising, they would *avoid advertising directed to young persons*, and would continue to abstain from advertising in school and college publications, would continue not to distribute sample cigarettes or engage in promotional activities on school and college campuses, would continue not to use testimonials from athletes or other celebrities who might have special appeal to young people . . . ." (1970 U.S. Code Cong. & Admin. News, at p. 2660, reproducing Sen. Rep. No. 91-566, *supra*, italics added.) The report noted: "The committee cannot overstate its strong desire that the cigarette industry not only honor its statement *carefully to limit print advertising so as not to appeal to youth*, but that it will also exercise restraint in the overall use of print advertising and other forms of promotion." (*Id.* at p. 2662, italics added.) Reynolds argues this indicates Congress intended to preempt the field of advertising to minors, and to rely solely on voluntary self-regulation. It reads too much into too little. This shard of legislative history is not dispositive either way, but it certainly does not prove Reynolds's position.

More recently, Congress enacted legislation allowing certain monetary grants to states, but "only if the State involved has in effect a law providing that it is unlawful for any manufacturer, retailer, or distributor of tobacco products to sell or distribute any such product to any individual under the age of 18," and "will enforce" that law. (42 U.S.C. § 300x-26(a), (b).) A state receiving such a grant must agree to develop "strategies to discourage the use of . . . tobacco products by individuals to whom it is unlawful to sell or distribute such . . . products." (42 U.S.C. § 300x-22(b)(2)(B).)

We thus observe that cigarette manufacturers themselves promised to eschew advertisements targeting the young; Congress intended to allow and more recently has even encouraged states to enact and *enforce* laws prohibiting the sale of cigarettes to minors; and Congress has required states, as a

condition of receiving certain grants, to "discourage" the use of tobacco by those to whom it is unlawful to sell or distribute it, i.e., to minors. No appropriately "narrow" interpretation of section 1334(b) could conclude, in the face of this evidence, that Congress nevertheless left states powerless to prohibit advertisements that target minors and, by targeting minors, that encourage, not discourage, those illegal sales. This evidence of congressional purpose, the " ' "ultimate touchstone" ' of pre-emption analysis" (*Cipollone, supra*, 505 U.S. at p. __ [120 L.Ed.2d at 422, 112 S.Ct. at p. 2617]), shows no intent to preempt the cause of action at issue here.

Moreover, even if congressional intent were less than clear, Reynolds still would not prevail. Given the presumption against preemption, courts assume " 'that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' " (*Cipollone, supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 422, 112 S.Ct. at p. 2617] [speaking for the majority at this point], quoting *Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146].) Here, there is certainly no clear and manifest purpose of Congress to preempt this cause of action. We must therefore assume that the historic police powers of the state have not been superseded.

Reynolds cites certain statements by congressional opponents of the 1969 Act as supporting its position. We doubt that statements criticizing the bill help to discern the intent of the majority. (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856] [statements by individual legislators who voted in *favor* of the statute are generally not considered].) The statements do not aid Reynolds. Several dissenting Senators expressed the fear that "if the [Federal Trade Commission] is barred by statute from requiring a warning in advertising, the public will have no meaningful defense, even against a massive onslaught of print advertising . . . designed to make cigarette smoking appealing to young people." (1970 U.S. Code Cong. & Admin. News, at p. 2667, reproducing Sen. Rep. No. 91-566, *supra*.) Attempting to transform rhetoric into self-fulfilling prophesy, Reynolds claims the dissenters prove its case. We disagree. Opponents' fears hardly prove what the majority wanted or intended. The majority may merely have disagreed with the dissenters' bleak assessment of the impact of the bill. Other dissenting statements are similarly unhelpful to Reynolds.

Reynolds argues further that because this action seeks injunctive relief rather than common law damages, it is preempted. It seems to argue first that any injunctive relief, of whatever nature, is preempted, and claims the *Cipollone* plaintiff conceded that section 1334(b) was intended " 'to trump

"state statute[s], injunction[s], or executive pronouncement[s]." ' " (Quoting *Cipollone, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 426, 112 S.Ct. at p. 2620].) This overstates the plaintiff's argument in *Cipollone,* which was merely that the section applied "only" to positive enactments, a claim the plurality rejected, not that *all* such enactments were preempted. (See *ibid.*) The *Cipollone* plurality made clear it found "no distinction between positive enactments and common law . . . ." (*Ibid.*)

Reynolds also posits that because both Justices Blackmun and Scalia, who together spoke for five justices, criticized the plurality's analysis of what claims were and were not preempted, and because even Justice Blackmun would find at least some positive enactments covered by section 1334(b), the two separate opinions form a majority finding injunctive relief preempted. But the dissenters criticized the plurality from opposite directions. Justice Blackmun argued that the plurality's analysis resulted in too much preemption; Justice Scalia argued it resulted in too little. Nothing in Justice Blackmun's opinion suggests that he would find more preemption regarding injunctions than the majority, and certainly nothing suggesting he would leave the states powerless to combat advertising targeting minors. Indeed, Justice Blackmun argued that the 1965 statute "can bear only one meaning: that States are prohibited merely from 'mandating particular cautionary statements . . . in cigarette advertisements' "; and that "there is no suggestion in the legislative history that Congress intended to expand the scope of the pre-emption provision when it amended the statute in 1969." (*Cipollone, supra,* 505 U.S. at pp. __, __ [120 L.Ed.2d at pp. 434, 437, 112 S.Ct. at pp. 2626, 2629] (conc. & dis. opn. of Blackmun, J.).)

Reynolds finally argues that some forms of injunctive relief at least would be preempted, such as a requirement of "additional health warning labels on advertisements." This may be the case, but the sole issue before us is whether the basis for the injunctive relief sought is preempted. It is not. In sum, we hold that the targeting minors cause of action is not preempted, not that any particular form of injunctive relief would be proper. Any challenge to a particular remedy, should plaintiff prevail on the merits, is premature.

## III.

### CONCLUSION

As early as 1891, the Legislature cared deeply enough about smoking and minors that it prohibited the sale of cigarettes to them, just as it earlier had banned minors from houses of prostitution and would later ban them from prizefights. For over a century, with watchful eye, in its role as *parens*

*patriae,* it has maintained a paternalistic vigilance over this vulnerable segment of our society. It is now asserted that plaintiff's effort to tread upon Tobacco Road is blocked by the nicotine wall of congressional preemption. The federal statute does not support such a view. Congress left the states free to exercise their police power to protect minors from advertising that encourages them to violate the law. Plaintiff may proceed under that aegis.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Baxter, J., George, J., and Werdegar, J., concurred.