Filed 6/30/23  Scharf v. Scharf Investments CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JEFFREY SCHARF et al., | H050150 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 22CV395005) |
| v. | |
| SCHARF INVESTMENTS, LLC, et al., | |
| Defendants and Respondents. | |

Jeffrey Scharf and Sherril Smith-Scharf—subject to an arbitration award in favor of respondents Scharf Investments, LLC and Brian Krawez—petitioned the trial court to correct the award, and the trial court granted respondents' motion to quash service of the petition.  The Scharfs' appeal asks us to determine whether delivery of the summons and petition through the mail slot of the LLC's closed and vacant office substantially complies with service requirements, where respondents received actual notice four days after the deadline for service and six days before their answer to the petition would have been due.  Because even liberal construction of the operative statutes requires more notice than the Scharfs afforded respondents here, we affirm.

# I. BACKGROUND[1]

On November 10, 2021, a three-arbitrator panel awarded a total of $83,844,086.26 to Krawez and the LLC for claims relating to the Scharfs' sale to Krawez of their minority interest in the LLC.[2] The panel further enjoined Jeffrey Scharf from "misrepresenting his role" at the LLC and "making false disparaging statements" about the LLC. The Scharfs were served with the award the same day.

A petition to correct an arbitration award "shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." (Code Civ. Proc., § 1288;[3] see also § 1286.8, subd. (a).) Accordingly, 99 days after service of the final award, on February 17, 2022, the Scharfs filed a petition to correct the arbitration award, challenging the $5 million punitive damages component of the total award and the grant of injunctive relief. The Scharfs attempted service the same day, one day before the deadline. The LLC office was generally open weekdays from 7:30 a.m. to 4:00 p.m. When the process server arrived at the office at 4:41 p.m., after the office had already closed, a research analyst who had stayed late opened the door. The process server asked for Krawez, was informed he was unavailable, and, when the research analyst offered to pass on a message to Krawez, said to tell Krawez that "Tom was looking for him," without otherwise identifying his purpose or inquiring whether the office would be open the following day, a Friday.

---

[1] Respondents' request for judicial notice of the trial court's September 29, 2022, order confirming the subject arbitration award in this case is denied, the order having no relevance to the service issue before us. (Evid. Code, § 452, subd. (d); *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["Although a court may judicially notice a variety of matters . . . , only *relevant* material may be noticed."].)

[2] Following the award, the Scharfs retained new counsel on December 14, 2021, to represent them in litigation with Krawez and the LLC still pending in the Santa Cruz County Superior Court and to review the arbitration award and arbitration record.

[3] Undesignated statutory references are to the Code of Civil Procedure.

The LLC office was in fact closed from Friday, February 18 through Monday, February 21, 2022, for the holiday weekend, although Friday itself was not a recognized holiday. Accordingly, when the process server returned at 10:06 a.m. that Friday, the office was locked and apparently vacant. The process server nonetheless returned at 3:34 p.m. to put the documents through the mail slot of the still closed and vacant office. The process server indicated on the Judicial Council boilerplate form that service was made by substituted service; in the space intended for identifying the "person . . . apparently in charge at the office or usual place of business" with whom the documents were left, the process server wrote, "PLACED DOCUMENTS INSIDE OFFICE SUITE BY USING THE MAIL SLOT."

The documents were found on Tuesday, February 22, 2022, when the office reopened. Later that day, two additional copies addressed to Krawez arrived at the office by mail. Krawez and respondents' counsel received a copy at 4:30 p.m.

Krawez and the LLC moved to quash service of the petition, arguing that the Scharfs failed to properly serve the petition before the deadline mandated by section 1288 and that, despite ongoing communications between the parties' counsel, the Scharfs had done nothing to alert respondents to the filing of the petition besides the service by mail and delivery by mail slot. Over the Scharfs' opposition, the trial court granted the motion to quash service and concluded the petition to correct the arbitration award was moot.

The Scharfs timely appealed.

## II.    DISCUSSION

Service of a summons is typically "by personal delivery of a copy of the summons and of the complaint to the person to be served." (§ 415.10.) For an LLC, service of the summons may be made by personal delivery to the LLC's designated agent. (Corp. Code, § 17701.16, subd. (b).) Where the person to be served is sued in an individual capacity and personal delivery cannot be achieved despite reasonable diligence, section 415.20 authorizes substituted service on "a competent member of the household

3

or a person apparently in charge of [the person's] office" by leaving a copy in that person's presence and informing the person of the contents.  (§ 415.20, subd. (b).)  The summons and complaint must thereafter be mailed to the person to be served.  (*Ibid*.)  Substituted service on an LLC's designated agent is similar except that it requires no showing of reasonable diligence:  the delivery of the papers must be to the designated agent's office, left "during usual office hours" with a person apparently in charge of the office.  (*Id*., subd. (a).)  These statutory requirements " ' "should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint." ' " (*Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778 (*Pasadena Medi-Center*)[4]; *Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544 [applying liberal construction to substituted service].)

Once Krawez and the LLC challenged personal jurisdiction by filing their motion to quash, it became the Scharfs' burden "to prove the existence of jurisdiction by proving . . . the facts requisite to an effective service." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1440 (*Dill*); see *id*. at p. 1439 [affirming dismissal where plaintiff's mailing of summons and complaint to corporation failed to identify an individual specified in § 416.10].)  The Scharfs contend that their good-faith service efforts and respondents' receipt of actual notice constitute substantial compliance with section 415.20, which governs substituted service.  Because the facts surrounding service

---

[4] As courts have subsequently observed, the high court in *Pasadena Medi-Center* "was misled as to the legislative history" of the Jurisdiction and Service of Process Act of 1969, but "its public policy analysis was clearly correct." (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 408 (*Summers*); see also *ibid*. at fn. 8; *Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 863 (*Gilbert*).)

of the petition are not in dispute, we review de novo the question of jurisdiction. (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1159.)

## A. *Reasonable Diligence as to Krawez*

We first address whether the Scharfs were reasonably diligent in their attempts at service on Krawez, as reasonable diligence is required before a party can resort to substituted service on a natural person (as opposed to an LLC). (§ 415.20, subd. (b).) "[E]ach case must be judged upon its own facts." (*Evartt v. Superior Court* (1979) 89 Cal.App.3d 795, 801 [deeming insufficiently diligent the initiation of service efforts three days before expiration of the applicable three-year limitations period].)

The Scharfs rely on their process server's three visits to the LLC's closed office as justifying the resort to substituted service on Krawez. "Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as ' "reasonable diligence." ' " (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389 (*American Express*).) We read the looseness of this formulation—the "ordinarily" qualifier and the abstention from a hard number—to be consonant with *Pasadena Medi-Center*'s call to consider each situation from a practical standpoint. At bottom, what constitutes reasonable diligence of efforts at personal service is determined based on the totality of case-specific factors.

One of these case-specific factors is that the Scharfs left themselves only a narrow margin within which to effect service as required by the Code of Civil Procedure, but apparently failed to consider the long-standing business hours predictably in effect on February 17. The Scharfs' three attempts at personal service were accordingly squeezed into a 24-hour period immediately preceding a holiday weekend. The first attempt was after the LLC's known business hours: the record reflects that 4:00 p.m. has been the LLC's normal closing time since at least 2007, and that as early as January 2001, Jeffrey Scharf had noted the office's 4:00 p.m. closing time in its publicly accessible Uniform Application for Investment Adviser Registration he submitted as the LLC's president.

5

The second attempt, by the same process server, was without his having inquired of the research analyst encountered the day before about holiday hours.  The same process server made what the Scharfs count as their third attempt at personal service with full awareness that the office had been closed and vacant during its customary hours that day; this makes it difficult to endorse the notion that the office remained—at that time—"a proper place" for personal service on Krawez (see *American Express*, *supra*, 199 Cal.App.4th at p. 389) or that the server's return that afternoon could be deemed an "attempt to personally serve" Krawez, as opposed to the abandonment of that endeavor in favor of substituted service.

The Scharfs cite neither reason nor authority to justify why they or their process server could not have confirmed the office's hours before attempting service and served the papers earlier in the day on February 17, before the office's customary closing hour. And the record discloses no effort to serve Krawez at his residence, his next likeliest location after hours.  Indeed, Krawez provided unrebutted evidence that he was home on February 17 until approximately 8:00 p.m., and that another "competent member of [his] household" was at the residence for much of February 18.  A service attempt at his house therefore would have had a high probability of success.  On this record, accordingly, the reasonable diligence of the Scharfs' service efforts is doubtful.

**B.**     *Substantial Compliance*

Even assuming reasonable diligence as to Krawez personally, however, "a finding of substantial compliance requires three preconditions.  First, there must have been *some* degree of *compliance* with the offended statutory requirements.  [Citations.]  Second, the objective nature and circumstances of the attempted service must have made it ' " 'highly probable' " ' that it would impart the same notice as full compliance.  [Citation.]  Finally, it must in fact have imparted such notice, or at least sufficient notice to put the defendant on his defense."  (*Gilbert*, *supra*, 179 Cal.App.4th at pp. 865-866.)  The "offended statutory requirements" at issue here are that a summons and complaint be left with or in

6

the presence of a "responsible person" at the defendant's place of business, "who shall be informed of the contents thereof."  (§ 415.20, subds. (a)-(b); see also 2 Witkin, Cal. Proc. (6th ed. 2023) Jurisdiction, § 128 [defining substituted service as "delivery to a responsible third person at the defendant's home or place of business," followed by mailing].)  The Scharfs established neither an adequate degree of compliance nor the probable or actual efficacy of their efforts to comply.

### 1. *Degree of Compliance*

It is undisputed that the Scharfs' process server informed no one of the summons and petition left at defendants' vacant office.  Instead, the Scharfs allowed predecessor counsel's representations—touting their acceptance of the arbitration panel's award as "final"— to be the last word on the subject until four days after the deadline for service had passed.

Proof of substituted service—unlike service under sections 415.10, 415.30, and 415.40—"does not require evidence that the defendant actually received the summons," nor does it mandate a particular timeline for mailing.  (See *Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 251 (*Johnson & Johnson*).)  But precisely because it is deemed effective upon completion of "[t]he 'required acts' . . . specified in the provision which sets forth the mechanics of substituted service" (*id.* at p. 251), we reject the Scharfs' suggestion at oral argument that the required act of personal delivery to a duly informed responsible person was intended merely as a vestigial belt to the mailing's suspenders.  Had the Legislature intended to permit service by mail without the acknowledgment or proof of receipt that sections 415.30 and 415.40 require, it would have so instructed us.  Instead, it required personal delivery—before mailing—to an actual person in the defendant's stead, one associated with the defendant by their presence in the defendant's residence or place of business.  And if this substitute were merely intended to be a passive receptacle akin to a mail slot, there would have been no need for the Legislature to specify that the person be responsible or to further require the

responsible person be informed of the contents of a summons package not addressed to them.  This required advisement presumes that the recipient of the summons is capable of exercising some agency for the benefit of the defendant.  (See *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1393 (*Bein*); see *id.* at p. 1394 [deeming compliance with § 415.20 substantial where service was made upon "a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party' "].)  The Scharfs' assertion that their noncompliance here was merely "minor" and "technical" would effectively excise from the statute the requirement of personal delivery and affirmative advisement in favor of what on this record is functionally indistinguishable from service by mail, albeit twice over.

The Scharfs rely heavily on the California Supreme Court's direction in *Pasadena Medi-Center* that the service of process statutes should be "liberally construed."  But *Pasadena Medi-Center* did not purport to define substantial compliance for purposes of substituted service or to address the timeliness of notice, actual or constructive.  "As is well established, a case is authority only for a proposition actually considered and decided therein."  (*In re Chavez* (2003) 30 Cal.4th 643, 656.)  It is not the case that "if service of process, even if totally outside the statutory prescriptions, has somehow resulted in actual notice to the defendant in time to defend the action, then any defects in the manner of service should be overlooked."  (*Summers*, *supra*, 140 Cal.App.4th at p. 415.)

For the proposition that the degree of compliance is immaterial so long as they acted with good faith and eventually provided actual notice, the Scharfs rely on the observation in *Khourie, Crew & Jaeger v. Sabek, Inc.* (1990) 220 Cal.App.3d 1009 (*Khourie*) that "[t]he evident purpose of . . . section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a responsible person, plus actual notification of the action . . . ."  (*Id.* at p. 1013.)  But the court in *Khourie* affirmed a trial court's discretionary denial of a motion to set aside appellants' default under

8

section 473—where the burden in the trial court was on the defendants to establish a clear abuse of discretion—not the reversal of a motion to quash service where the plaintiffs bore the burden of defending the adequacy of service. (Compare *id.* at p. 1012; with *Dill*, *supra*, 24 Cal.App.4th at pp. 1439-1440.) "The question of whether service was properly made . . . [was] relevant only as it tends to support the argument that the trial court abused its discretion in denying the motion to set aside the default." (*Khourie*, *supra*, 220 Cal.App.3d at pp. 1012-1013.) Accordingly, we do not read the good-faith/actual notice dictum from *Khourie* as a categorical rule that good faith and (eventual) actual notice will always constitute substantial compliance. To read *Khourie* more broadly would disregard *Pasadena Medi-Center*'s call for a practical, situation-specific inquiry.

### 2. *Probability of Same Notice as Full Compliance*

To the extent the Scharfs assert their service efforts had the same probable efficacy as those deemed sufficient in *Khourie*, we are unable to agree. In *Khourie*, the process server went to the defendant's place of business and found the door locked. (*Khourie*, *supra*, 220 Cal.App.3d at p. 1012.) A woman responded when the process server rang the bell, and although she refused to identify herself or unlock the door, the process server explained his purpose, told her he was leaving the summons and complaint outside the locked door, and then left the documents just outside the door as she watched. (*Ibid.*) The "actual notice" which the court in *Khourie* found dispositive was in fact what the Scharfs urge us to treat as inconsequential here: "the process server provided actual notice of the documents to the person apparently in charge of Sabek's office and . . . left them [at] the office door." (*Id.* at p. 1014.) The good-faith attempt at physical service in *Khourie* was thus, as prescribed in *Gilbert*, " ' " 'highly probable' " ' [to] impart the same notice as full compliance" and "in fact . . . imparted such notice, . . . to put the defendant on his defense." (*Gilbert*, *supra*, 179 Cal.App.4th at p. 866.) In *Pasadena Medi-Center* as well, it was undisputed that an apparently responsible person received timely notice; rather, the asserted defect in service was that the plaintiff had not served "the *official*

9

secretary-treasurer" but "the *ostensible* secretary-treasurer: i.e., the officer held out to the public as secretary-treasurer." (*Pasadena Medi-Center*, *supra*, 9 Cal.3d at p. 779 (italics added).)

No such effort at communication with a responsible person—or any person, on the premises or off—occurred here. The Scharfs' process server, unlike in *Khourie*, had no reason to believe that any responsible persons were present at the office to be informed, to inform themselves by reading the contents, or, crucially, to inform Krawez of their contents—as one might reasonably expect a responsible person apparently in charge of the office to do upon personal delivery of a summons package. On the one occasion that the process server encountered someone at the office, the process server did not reveal his purpose. The following day, when it was clear the acts required to meet the deadline for substituted service were "physically impossible" as the Scharfs put it, no effort was made to inform *any* responsible person, even off premises, even though Krawez and the LLC were known to be represented by counsel in both the underlying arbitration and related litigation locally. Under these circumstances, we are unable to say that depositing the summons through the mail slot of a closed office before a holiday weekend was "more likely than not" (*Bein*, *supra*, 6 Cal.App.4th at p. 1394) to afford the same notice as personal delivery to a responsible person informed of its contents.

### 3. *Sufficiency of Actual Notice*

At bottom, the Scharfs' reliance on the eventual fact of notice to Krawez—to the exclusion of when it was received—exceeds liberal construction of the substituted service statute to excise the first of its requirements. At oral argument on appeal, the Scharfs relied on *Johnson & Johnson*, *supra*, 38 Cal.3d 243 for the proposition that their notice to defendants was timely "as a matter of law" because substituted service is complete on the date of mailing. *Johnson & Johnson*, however, involved code-compliant service, and a more accurate statement of its rule is that " '[s]ervice is complete' "—for purposes of section 581a's three-year deadline for service—" 'when *all* of the required acts are

10

done.' " (*Johnson & Johnson*, *supra*, at p. 249, italics added.)  And mailing under section 415.20 is not authorized until "[]after" the server has first left the summons and complaint or petition with a responsible person informed of their contents.  (§ 415.20, subds. (a) & (b).)  *Johnson & Johnson* thus does nothing to establish that the Scharfs' *nonconforming* efforts at service under section 415.20 excuse the untimeliness of the actual notice on which the Scharfs simultaneously rely to vitiate the nonconformity of their efforts.

The high court's observation in *Johnson & Johnson* that "the Legislature viewed service by mail as [a] more reliable method" of providing actual notice than section 415.20's requirement of personal delivery to a person apparently in charge (see *Johnson & Johnson*, *supra*, 38 Cal.3d at p. 251) does not excuse the failure under section 415.20 of personal delivery to anyone at all.  The court made this observation in evaluating when service under section 415.40 would be effective—in light of its return receipt requirement—not whether a party could accomplish substantial compliance with section 415.20 even in the complete absence of one of its requirements.  (*Id*. at pp. 245-246, 251 [emphasizing that the statute at issue in the appeal was section 415.40 and noting that the "required acts" for substituted service are those "specified in the provision which sets forth the mechanics of substituted service"].)  Timely delivery of process to "a person apparently in charge" who is also "informed of the contents" is of sufficient importance under section 415.20 that the Legislature has not only required personal delivery to precede mailing but also dispensed with the requirement for acknowledgement or proof of receipt otherwise required of service by mail.  (See, e.g., *Ginns v. Shumate* (1977) 65 Cal.App.3d 802, 805-806; see also *Khourie*, *supra*, 220 Cal.App.3d at p. 1014 ["actual notice" is satisfied by informing the responsible person of the nature of the documents left at her door]; cf. §§ 415.30 and 415.40.)

To find substantial compliance strikes us as particularly problematic here, where section 1290.6 afforded respondents only 10 days to respond to the Scharfs' petition, and

11

four were lost to the defect in service. We need not carve out a categorical deadline for actual notice to find the delay in actual notice relevant to the practical, case-specific inquiry *Pasadena Medi-Center* prescribes.

The Scharfs did not meet their burden of establishing effective service.

### III.    DISPOSITION

The trial court's order is affirmed. Krawez and the LLC are entitled to their costs on appeal.

_____

LIE, J.

WE CONCUR:

_____

GROVER, ACTING P.J.

_____

WILSON, J.

Scharf et al. v. Scharf Investment, LLC et al.

H050150