[No. B183487. Second Dist., Div. Five. June 13, 2006.]

STATE OF CALIFORNIA ex rel. LINDA NEE et al., Plaintiff and
Appellant, v.
UNUMPROVIDENT CORPORATION et al., Defendants and Respondents.

## Counsel

Anderson Kill & Olick, Alex D. Hardiman; and Scott C. Turner for Plaintiff and Appellant.

Barger & Wolen, Steven H. Weinstein, Richard B. Hopkins and Spencer Y. Kook for Defendants and Respondents.

OPINION

**ARMSTRONG, J.**—Linda Nee and John Metz, acting on behalf of plaintiff, the State of California, appeal the dismissal of the complaint brought under Insurance Code[1] section 1871.7 following defendant Unumprovident Corporation's successful demurrer to this qui tam action. The trial court ruled that the statutes upon which plaintiff's case was brought do not apply to the defendant's claims handling practices. We agree, and so affirm the trial court.

## PROCEDURAL HISTORY

This is a qui tam action brought under section 1871.7 on behalf of the State of California. The complaint alleged that defendant Unumprovident Corporation has victimized "the general public and/or policyholders and/or potential policyholders and/or government regulators and/or investors" by "making statements . . . containing false or misleading information" in the marketing and sale of disability insurance policies, and in connection with claims for payment or other benefits pursuant to those insurance policies, all in violation of the provisions of section 1871.7. Pursuant to section 1871.7, subdivision (e), plaintiffs requested civil penalties, temporary injunctive relief, and other equitable relief.

On defendant's demurrer, the trial court concluded that "[Insurance Code] section 1871.7 and Penal Code sections 549 and 550 do not apply to the alleged insurer claims handling practices," and dismissed the action.

Plaintiff appeals, contending that the trial court erred in its interpretation of section 1871.7.

## DISCUSSION

The question of whether an insurer is subject to a qui tam action under section 1871.7 based on its marketing and claims handling practices requires the interpretation and application of the statute to undisputed facts. As such, the issue presented is a question of law subject to our de novo review. (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 543 [132 Cal.Rptr.2d 165]; *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 493 [99 Cal.Rptr.2d 721].)

Plaintiff argues that the trial court misinterpreted the relevant statutory provisions by ignoring the words "every person," and by examining the legislative history, context, notes and chapter headings relating to the statutes.

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

Plaintiff also argues that the trial court should have deferred to the alleged opinion of the California Department of Insurance regarding the interpretation of these statutes.

■ We summarized in *People ex rel. Allstate Ins. Co. v. Weitzman, supra,* 107 Cal.App.4th 544 the standard applicable to statutory interpretation, as follows: " 'When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent.' [Citations.] . . . ' "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . ." ' [Citation.] ■ However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658–659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: 'We are not prohibited "from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . ." ' In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: 'The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . .' The Supreme Court has held: ' "The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers." [Citation.]' (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, the Supreme Court has held: 'We have recognized that a wide variety of factors may illuminate the legislative design, " 'such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction.' " [Citations.]' (*Walters v. Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].)" (*People ex rel. Allstate Ins. Co. v. Weitzman, supra,* 107 Cal.App.4th at p. 544.)

We turn then to the language of the relevant statutes.[2]

---

[2] We recognize that title and chapter headings "are unofficial and do not alter the explicit scope, meaning, or intent of a statute." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602 [7 Cal.Rptr.2d 238, 828 P.2d 140].) They are not, as plaintiffs would have it, on that account meaningless.

■    An action under section 1871.7 may be brought on behalf of the state against "every person" who violates Penal Code sections 549 and 550. Those statutes, in turn, criminalize the making of false or fraudulent claims to insurers.[3]

---

[3] Penal Code section 549, unofficially entitled "False or fraudulent claims against insurers; solicitation, acceptance or referral of business; penalties and restitution" by West Publishing provides: "Any firm, corporation, partnership, or association, or any person acting in his or her individual capacity, or in his or her capacity as a public or private employee, who solicits, accepts, or refers any business to or from any individual or entity with the knowledge that, or with reckless disregard for whether, the individual or entity for or from whom the solicitation or referral is made, or the individual or entity who is solicited or referred, intends to violate Section 550 of this code or Section 1871.4 of the Insurance Code is guilty of a crime, punishable upon a first conviction by imprisonment in the county jail for not more than one year or by imprisonment in the state prison for 16 months, two years, or three years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine. A second or subsequent conviction is punishable by imprisonment in the state prison or by imprisonment in the state prison and a fine of fifty thousand dollars ($50,000). Restitution shall be ordered, including restitution for any medical evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid."

Penal Code section 550, unofficially captioned "False or fraudulent claims or statements; prohibited acts" by West Publishing reads in part as follows:

"(a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

"(1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.

"(2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud.

"(3) Knowingly cause or participate in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim.

"(4) Knowingly present a false or fraudulent claim for the payments of a loss for theft, destruction, damage, or conversion of a motor vehicle, a motor vehicle part, or contents of a motor vehicle.

"(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

"(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

"(7) Knowingly submit a claim for a health care benefit that was not used by, or on behalf of, the claimant.

"(8) Knowingly present multiple claims for payment of the same health care benefit with an intent to defraud.

"(9) Knowingly present for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time.

"(10) For purposes of paragraphs (6) to (9), inclusive, a claim or a claim for payment of a health care benefit also means a claim or claim for payment submitted by or on the behalf of a provider of any workers' compensation health benefits under the Labor Code.

"(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

Section 1871.7 is found in article 1 of the Insurance Fraud Prevention Act. Section 1871, which presents the Legislature's relevant findings and declarations, states: "(a) The business of insurance involves many transactions that have the potential for abuse and illegal activities. There are numerous law enforcement agencies on the state and local levels charged with the responsibility for investigating and prosecuting fraudulent activity. This chapter is intended to permit the full utilization of the expertise of the commissioner and the department so that they may more effectively investigate and discover insurance frauds, halt fraudulent activities, and assist and receive assistance from federal, state, local, and administrative law enforcement agencies in the prosecution of persons who are parties in insurance frauds." The section then goes on to recite the particular problems with automobile insurance fraud, workers' compensation fraud, and health insurance fraud, predicting that the prevention of these types of fraud will reduce policyholder premiums. The clear import of the legislation is to reduce fraud against insurers in order to benefit policyholders. There is no mention of a problem with insurance claims handling practices.

Section 1871.7, entitled by West Publishing "Runners, cappers and steerers; unlawful employment to procure clients; penalties; civil actions by district attorney, commissioner, or interested persons," provides:

"(a) It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to Division 4 (commencing with Section 3200) of the Labor Code or to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer.

"(b) Every person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five

---

"(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

"(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

"(3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

"(4) Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state."

thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance. The court shall have the power to grant other equitable relief, including temporary injunctive relief, as is necessary to prevent the transfer, concealment, or dissipation of illegal proceeds, or to protect the public. The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation."

In addition, section 1871.1 provides insurers and their agents with the right to access public records while investigating suspected fraud; section 1871.2 requires an insurer to notify claimants that " '[a]ny person who knowingly presents [a] false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison' "; section 1871.3 requires an insurer to obtain certain specified statements from an insured under penalty of perjury in connection with an auto theft claim; and section 1871.4 through 1871.6 make it unlawful to present a false workers' compensation claim, and set forth penalties for presenting such claims. Article 2 of the same act in which section 1871.7 is found outlines the duties and responsibilities of the Bureau of Fraudulent Claims, which was created to "enforce the provisions of Sections 549 and 550 of the Penal Code." (§ 1872.) Article 2 provides a procedure for the submission by insurers of suspected fraudulent claims to the Bureau of Fraudulent Claims for its review and investigation (§ 1872.4) and provides to insurers immunity from civil liability for libel, slander, or any other nonmalicious act in advising the Bureau of Fraudulent Claims of suspected fraudulent claims. (§ 1872.5.)

■ We agree with the trial court that, taken as a whole, section 1871 et seq. is specifically tailored toward preventing and punishing the making of fraudulent claims to insurance companies. As we stated in *People ex rel. Allstate v. Weitzman, supra,* 107 Cal.App.4th at pages 547 through 548, while originally limited to the workers' compensation context, section 1871.7 was amended in 1994 to extend its applicability to " 'crimes involving fraudulent claims against insurers' "; section 1871.7, subdivision (b) was "designed to encourage insurers to bring section 1871.7 actions." (107 Cal.App.4th at p. 550.)

Plaintiff asks us to ignore the context of the statute and contends simply that section 1871.7, subdivision (b) must apply to insurers because the statute applies to any "person," and section 19 defines "person" to include a corporation. However, the meaning of a statute " ' "may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the

extent possible." ' " (*People ex rel. Allstate v. Weitzman, supra,* 107 Cal.App.4th at p. 544.) Section 1871.7, subdivision (b) is directed at "[e]very person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code," not simply to "every person," and a straightforward reading of these statutes makes clear that the class of persons who violate these sections are those who submit false or fraudulent claims to insurers.[4]

For instance, sections 550, subdivision (a)(1) through (9) and 550, subdivision (b)(3) and (4) of the Penal Code specifically refer to the presentation of false or fraudulent claims for compensation or benefits. Because plaintiff's allegations of insurer misconduct do not include the presentation of false or fraudulent claims, these sections by their terms cannot apply to defendant.

Plaintiff therefore must rely on Penal Code section 550, subdivision (b)(1) and (2). These sections penalize those who:

"(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

"(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

█ The wording of these provisions reveals that they simply do not apply to the conduct plaintiff complains of in the complaint. Insurers do not "support" or "oppose" claims, they "approve" or "deny" them. Nor do insurers submit "statements" as part of "a claim for payment." We believe the clear import of these sections is to extend liability to persons other than those who actually file the suspect claim. These provisions might apply, for example, to a doctor who submits false documentation in support of an employee's claim for benefits under a workers' compensation policy, or an employer who makes a false statement in opposition to such a claim, or to a person who files a false statement in support of an insured's claim under a disability policy, and extends as well to anyone who knowingly assists or conspires to do any of these things. They do not apply to the insurance

---

[4] We note as well that section 1871.7, subdivision (e) reads: "Any interested persons, including an insurer, may bring a civil action for a violation of this section . . . ." Thus, we can surmise that when the Legislature wanted to ensure that insurance companies were to be included in the definition of the term "person," it explicitly said so.

company to whom the claim is presented, which cannot conspire with itself to create civil liability. (See, e.g., *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

In short, we agree with plaintiff that the meaning of section 1871.7 is clear from the plain language of the relevant statutes: Penal Code sections 549 and 550 are tools to combat insurance claims fraud perpetrated against insurance companies, and "any person" who engages in such insurance claims fraud is the proper subject of a qui tam action under section 1871.7. However, plaintiff does not allege that defendant engaged in insurance claims fraud by presenting false or fraudulent claims to an insurance company, and thus defendant is not the proper subject of a lawsuit brought under section 1871.7.

Plaintiff further maintains that the "Commissioner's interpretation of the statute controls," and that the "Superior Court erred when it failed to follow the Insurance Commissioner's construction of the statute . . . ." The argument is not persuasive.

First, the administrative interpretation upon which this argument rests is the Insurance Commissioner's amicus curiae brief filed in connection with an unrelated lawsuit, *State of California ex rel. Metz v. Farmers Group Inc.* (Super. Ct. L.A. County) No. BC 278259, in which Metz (also a relator in this action) brought a qui tam suit under section 1871.7 against the Farmers Insurance group of companies. That brief, being hearsay, is not competent evidence of the Department of Insurance's interpretation of the statute.

Moreover, while it is true that there are instances when courts may look to the interpretation of an agency as one of several tools to determine the meaning of a statute, in the end, "[we] must . . . independently judge the text of the statute." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 322 [87 Cal.Rptr.2d 423, 981 P.2d 52].) And when, as here, the agency does not have a long-standing interpretation of the statute and has not adopted a formal regulation interpreting the statute, the courts may simply disregard the opinion offered by the agency. (*Ibid.*)

Finally, and most importantly, our Supreme Court has emphasized on several occasions that an administrative agency such as the Department of Insurance does not have the authority to "alter or amend" a statute, or "enlarge or impair its scope." (See *Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; see also *First Industrial Loan Co. v. Daugherty* (1945) 26 Cal.2d 545, 550 [159 P.2d 921] ["A ministerial officer may not . . . vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot

be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute."].) In our view, the agency interpretation of the statute proffered by plaintiff would do just that: alter the statute to enlarge its scope.

In sum, we agree with the trial court that plaintiff's complaint did not state a cause of action against defendant under section 1871.7.

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Kriegler, J., concurred.

On July 11, 2006, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 23, 2006, S145225. Corrigan, J., did not participate therein.