[No. B196455. Second Dist., Div. Eight. Nov. 9, 2007.]

STATE OF CALIFORNIA ex rel. JOHN METZ, Plaintiff and Appellant, v. FARMERS GROUP, INC., et al., Defendants and Respondents.

**COUNSEL**

Anderson Kill & Olick and Edward J. Stein for Plaintiff and Appellant.

Barger & Wolen, Steven H. Weinstein, Spencer Y. Kook and Peter Sindhuphak for Defendants and Respondents.

**OPINION**

**FLIER, J.**—In this appeal, appellant John Metz seeks to overturn the trial court's grant of a judgment on the pleadings in favor of respondents.[1] The present case, which was filed in July 2002, allegedly involves respondents' handling of total vehicle loss claims. We agree with our colleagues in

[1] Respondents are Farmers Group, Inc., and several affiliates, namely, Farmers Insurance Exchange, Mid-Century Insurance Company, Fire Underwriters Association, Fire Insurance Exchange, Truck Underwriters Association and Truck Insurance Exchange (sometimes referred to as Farmers respondents), together with Creative Automotive Consultants (CAC).

Appellant alleged CAC is an "agent" of Farmers respondents. CAC has not submitted a brief, but instead relies on its joinder to the brief filed by Farmers respondents.

Division Five that Insurance Code section 1871.7[2] was not designed to prohibit fraud on the part of insurers, but rather to prohibit submission of fraudulent claims to insurers, and thus we affirm the judgment of dismissal.

This is appellant's third attempt to assert a claim under section 1871.7 based upon an insurance company's claims handling practices.

In *State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442 [44 Cal.Rptr.3d 491] (*Unumprovident*), appellant sought to assert a section 1871.7 claim against a disability insurer. Division Five of this court held that an insurer is not subject to a qui tam action under section 1871.7 based on its marketing and claims handling practices. (*Unumprovident*, at pp. 450–451.)

In April 2004, based on the same facts as those underlying the present action, appellant filed an action against CCC Information Services, Inc. (CCC). Appellant alleged that CCC violated section 1871.7 by making false or misleading statements in connection with the settlement of appellant's 1999 automobile insurance claim. The claim was made under a policy issued by one of the Farmers respondents, following an accident in which appellant's 1992 Mitsubishi Galant suffered a total loss. Appellant alleged CCC provided "low-ball" "comparable automobile" valuations to one or more of the Farmers respondents in the claim settlement process to induce a fraudulently low insurance settlement that failed to adequately compensate appellant for his total loss. In *State ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402 [57 Cal.Rptr.3d 156] (*Information Services*), Division Five held that the action against CCC was time-barred and violated section 1871.7, subdivision (e)(5)'s proscription against the filing of related actions by any person other than the district attorney or Insurance Commissioner. (*Information Services*, at pp. 417–418.) In light of this resolution, Division Five did not reach the issue of whether appellant's action against CCC was also improper under *Unumprovident.* (*Information Services*, at p. 407, fn. 3.)

## FACTS AND PROCEDURAL HISTORY

This appeal arises out of a qui tam action filed against respondents by appellant on behalf of the State of California to impose civil penalties and assessments for violations of section 1871.7, subdivision (b)[3] and to enjoin alleged violations of such statute.

---

[2] All further statutory references are to the Insurance Code unless otherwise noted.

[3] Section 1871.7, subdivision (b) provides, in pertinent part: "Every person who violates any provision of this section or Section 549 [regarding false or fraudulent claims against insurers], 550 [regarding false or fraudulent claims or statements], or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty . . .

Appellant's second amended complaint alleged that respondents made false or misleading statements in connection with the settlement of appellant's 1999 automobile insurance claim under a policy issued by the Farmers respondents, following an accident in which appellant's 1992 Mitsubishi Galant suffered a total loss.[4]

Appellant alleged that respondents violated section 1871.7, subdivision (b) in three ways: (1) using "arbitrary discounts" from list prices of comparable replacement vehicles, based on the unsubstantiated assumption that the insurance claimants would be able to negotiate a discounted price for replacement vehicles; (2) collecting price quotations for comparable vehicles but selecting only those "from the low end of the price spectrum of the comparables" in determining the fair market value of a comparable vehicle; and (3) making statements containing false or misleading information about facts material to insurance claims, while concealing respondents' unlawful valuation methods, during the marketing of their insurance policies, during the claims process and prior to claims settlement.[5]

While this action was pending, Division Five issued its opinion in *Unumprovident, supra*, 140 Cal.App.4th 442, holding that an insurer may not be sued in a qui tam action under section 1871.7 for its marketing and claims handling practices. Relying on *Unumprovident*, respondents moved for judgment on the pleadings on the ground that appellant's second amended complaint did not state facts sufficient to constitute a cause of action against respondents in that there is no private right of action under section 1871.7 against an insurance company based on its claim handling practices. The trial court granted the motion for judgment on the pleadings without leave to amend and dismissed the case with prejudice as to respondents. The court

plus an assessment of not more than three times the amount of each claim for compensation . . . pursuant to a contract of insurance. The court shall have the power to grant other equitable relief, including temporary injunctive relief, as is necessary to prevent the transfer, concealment, or dissipation of illegal proceeds, or to protect the public. The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation." Penal Code section 551 concerns automotive repair dealers and is not relevant to this case.

Section 1871.7, subdivision (e)(1) provides, in pertinent part: "Any interested persons, including an insurer, may bring a civil action for a violation of this section for the person and for the State of California. The action shall be brought in the name of the state. . . ." Appellant contends he is such an "interested" person, a contention we do not reach in light of our holding discussed, *post*.

[4] The pleading alleged that (1) the Farmers respondents are part of a reciprocal or interinsurance exchange, in which a number of individual participants exchange insurance contracts through the medium of an attorney in fact, sharing both risk and profits; and (2) respondents Farmers Group, Inc., Fire Underwriters Association and Truck Underwriters Association are attorneys in fact responsible for executing the reciprocal exchange's contracts.

[5] We do not address the merits of appellant's claim that respondents engaged in deceptive claims practices.

ruled that the second amended complaint alleged the Farmers respondents "are insurance companies, subsidiaries of insurance companies or agents of insurance companies," and, as such, "the *Unumprovident* holding applies." Since appellant alleged CAC was an "agent" of the Farmers respondents, the court found *Unumprovident* also applied to CAC and dismissed the action as to CAC as well.

Appellant timely appealed from the order of dismissal.

## STANDARD OF REVIEW

The issue whether an insurer is subject to a qui tam action under section 1871.7 based on its marketing and claims handling practices requires the interpretation and application of the statute to undisputed facts, and, as such, the issue presents a question of law subject to our de novo review. (*Unumprovident, supra*, 140 Cal.App.4th at p. 445; *Information Services, supra*, 149 Cal.App.4th at p. 413.) Because the present appeal arises from a motion for judgment on the pleadings, we assume the truth of all properly pleaded facts but not contentions, deductions or conclusions of fact or law (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 [130 Cal.Rptr.2d 517]), and our review is de novo (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720]).

## DISCUSSION

### *THE TRIAL COURT PROPERLY GRANTED RESPONDENTS JUDGMENT ON THE PLEADINGS*

1. *Qui Tam Action Unavailable for Insurer's Marketing and Claims Handling Practices*

█ As noted, *Unumprovident* held that an insurer is not "subject to a qui tam action under section 1871.7 based on its marketing and claims handling practices." (*Unumprovident, supra*, 140 Cal.App.4th at pp. 445, 452.) *Unumprovident* reasoned that by its terms an action under section 1871.7 may be brought on behalf of the state against "every person" who violates Penal Code sections 549 and 550, and those statutes in turn criminalize the making of false or fraudulent claims *to* insurers. (*Unumprovident*, at p. 447.) After noting that section 1871.7 is found within article 1 of the Insurance Frauds Prevention Act (§ 1871 et seq.), the court explained that section 1871 of the act presents the Legislature's relevant findings and declarations. The court indicated there is no mention in that section of any problem with insurance claims handling practices and concluded that "[t]he clear import of

the legislation is to reduce fraud *against insurers* in order to benefit policy-holders." (*Unumprovident*, at p. 448, italics added.) The court further noted that section 1871 et seq., taken as a whole, "is specifically tailored toward preventing and punishing the making of fraudulent claims *to insurance companies*." (*Unumprovident*, at p. 449, italics added.)

■  *Unumprovident* rejected appellant's argument that section 1871.7, subdivision (b) must be interpreted to apply to insurers because the statute states it applies to any "person" and because section 19 defines "person" to include a corporation. (*Unumprovident, supra*, 140 Cal.App.4th at p. 449.) The court stated, "the meaning of a statute ' " 'may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' " ' [Citation.] Section 1871.7, subdivision (b) is directed at '[e]very person who violates any provision of this section or Section 549 [or] 550 . . . of the Penal Code,' not simply to 'every person,' and a straightfor-ward reading of these statutes makes clear that the class of persons who violate these sections are those who submit false or fraudulent claims *to insurers*." (*Id.* at pp. 449–450, italics added.) In a footnote, *Unumprovident* commented, "[w]e note as well that section 1871.7, subdivision (e) reads: 'Any interested persons, including an insurer, may bring a civil action for a violation of this section . . . .' Thus, we can surmise that when the Legislature wanted to ensure that insurance companies were to be included in the definition of the term 'person,' it explicitly said so." (*Id.* at p. 450, fn. 4.)

The court in *Unumprovident* further observed that Penal Code section 550, subdivisions (a)(1) through (9) and (b)(3), (4) specifically refer to the presentation of false or fraudulent claims for compensation or benefits. The court concluded that because appellant's allegations of insurer misconduct in that case did not include the presentation of false or fraudulent claims, such sections by their terms did not apply to the defendant insurer. (*Unumprovident, supra*, 140 Cal.App.4th at p. 450.)

The court went on to note that appellant had to rely on Penal Code section 550, subdivision (b)(1), (2),[6] but such provisions "simply do not apply to the conduct plaintiff complains of in the complaint. Insurers do not 'support' or

---

[6] Penal Code section 550, subdivision (b) penalizes those who: " '(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact. [¶] (2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.' " (*Unumprovident, supra*, 140 Cal.App.4th at p. 450.)

'oppose' claims, they 'approve' or 'deny' them. Nor do insurers submit 'statements' as part of 'a claim for payment.' " (*Unumprovident, supra,* 140 Cal.App.4th at p. 450.) In short, the statutory provisions "do not apply to the insurance company to whom the claim is presented, which cannot conspire with itself to create civil liability." (*Id.* at pp. 450–451; see also *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*(1994) 7 Cal.4th 503, 514 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

■ Appellant's opening brief makes clear that the gravamen of his action "concerns [r]espondents' *claims handling practices* in determining how much to pay under automobile insurance policies for total vehicle loss claims." (Italics added.) Appellant concedes that "[t]he complaint . . . alleges that [r]espondents make statements containing false or misleading material information as part of, in connection with, or in support of or opposition to total vehicle loss claims and/or conceal, or knowingly fail to disclose the occurrence of events that affect a person's right or entitlement to any insurance benefit or payment, or the amount of such benefit or payment relating to these total vehicle loss claims." At heart, therefore, appellant's claims involve the manner in which respondents handle total loss claims, the very type of conduct subject to *Unumprovident*'s proscription.

2.  *Qui Tam Statute Inapplicable to Insurer's Agents and Affiliates, Including Insurance Exchange*

Appellant finds comfort in additional language in *Unumprovident* that states: "We believe the clear import of these sections [i.e., Penal Code section 550, subdivision (b)(1), (2)] is to extend liability to persons other than those who actually file the suspect claim. These provisions might apply, for example, to a doctor who submits false documentation in support of an employee's claim for benefits under a workers' compensation policy, or an employer who makes a false statement in opposition to such a claim, or to a person who files a false statement in support of an insured's claim under a disability policy, and extends as well to anyone who knowingly assists or conspires to do any of these things." (*Unumprovident, supra,* 140 Cal.App.4th at p. 450.)

Appellant asserts the Farmers respondents made "fraudulent claims" to insurance companies, arguing that respondents "assisted, and conspired with, *one another* to knowingly engage in unfair valuation schemes *related to* total vehicle losses." (Italics added.) Appellant urges that each time one of the attorney in fact Farmers respondents presented its exchange with reports or information regarding policyholder claims using unsubstantiated valuation procedures for purposes such as underwriting, and each time one of the Farmers respondents made statements containing "false or misleading" material information to the exchange about policyholder claims, such respondent

presented a false claim to an insurer in violation of Penal Code sections 549 and 550. Appellant argues that *Unumprovident* applies only to "stock insurance companies" and not to "reciprocal insurance exchanges." We agree with respondents that this is a distinction without significance. *Unumprovident* turned on whether the conduct in question could support a section 1871.7 claim, not whether the insurer entity is a stock insurance company or a reciprocal exchange.

Indeed, the second amended complaint acknowledged the corporate forms of the Farmers respondents are distinctions without any difference. Appellant alleged in his pleading that all of the Farmers respondents operate under a single service mark, "Farmers Insurance Group of Companies," and the "[e]mployees of each entity regard themselves as working for a unified entity known as 'Farmers.' " Further, appellant alleged, "[i]n advertising, [respondents] make no distinction among themselves, and hold themselves out to the public in the collective, as 'Farmers' or 'Farmers Insurance Group of Companies' " and the Farmers respondents "share common form policies and documents." The Farmers respondents allegedly "share the same strategic plan" and there is a "unity of interest and ownership" among them. Moreover, all respondents, including CAC, are alleged to have acted as agents of each other.

■ In the context of section 1871.7, subdivision (b), "Every person" must be viewed as excluding the insurer that receives and handles an insured's claim, as well the insurer's agents and affiliates aiding in the processing of the claim, whether the insurer entity is a stock insurance company or a reciprocal exchange. As *Unumprovident* explained: "taken as a whole, section 1871 et seq. is specifically tailored toward preventing and punishing the making of fraudulent claims *to insurance companies*. . . . [W]hile originally limited to the workers' compensation context, section 1871.7 was amended in 1994 to extend its applicability to ' "crimes involving fraudulent claims against insurers" '; section 1871.7, subdivision (b) was 'designed to encourage insurers to bring section 1871.7 actions.' [Citation.]" (*Unumprovident, supra,* 140 Cal.App.4th at p. 449, italics added; see also *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 546–552, 562 [132 Cal.Rptr.2d 165].) "Penal Code sections 549 and 550 are tools to combat insurance claims fraud perpetrated against insurance companies, and 'any person' who engages in such insurance claims fraud is the proper subject of a qui tam action under section 1871.7." (*Unumprovident,* at p. 451.) To interpret the statute in the manner urged by appellant would improperly alter the statutory scheme to "enlarge its scope." (*Id.* at p. 452.)[7]

---

[7] In support of his appeal, appellant requests that we take judicial notice of matters including (1) a ruling made by the Commissioner of the California Department of Insurance to the effect that appellant "represents the interests of consumers," (2) that prior commissioners have

## DISPOSITION

The judgment is affirmed. Respondents are to recover costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

---

determined he has worked for many years as an advocate representing the interests of consumers, (3) that he has been deemed by such department eligible to seek compensation for representation of consumers' interests in departmental proceedings, and (4) that he participated by the commissioner's request in a task force to draft the original version and subsequent revisions of the California Code of Regulations. Such matters, even if they were properly the subject of a request for judicial notice, are irrelevant to our determinations, and the request is accordingly denied. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on another point in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106] [only relevant matters may be judicially noticed; although "courts may notice official acts and public records, 'we do not take judicial notice of the truth of all matters stated therein' "].)