Filed 8/4/25

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRADLEY HIRDMAN, | D084304 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1931034) |
| CHARTER COMMUNICATIONS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Jessica Morgan, Judge.  Affirmed.

Yoon Law, Kenneth H. Yoon, Stephanie E. Yasuda; Law Offices of G. Samuel Cleaver and G. Samuel Cleaver for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Max Fischer, and Samsom C. Huang for Defendant and Respondent.

Bradley Hirdman filed a complaint against his former employer Charter Communications, LLC (Charter) alleging a single cause of action for civil penalties under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.).  Hirdman's lawsuit was premised on Charter's alleged

---

[1]    Undesignated statutory references are to the Labor Code.

violations of various Labor Code sections, including section 246, which governs an employer's calculation and payment of sick leave to its employees. The parties filed cross-motions for summary adjudication on this issue.

According to Hirdman, Charter improperly classified him as an "exempt employee" for purposes of calculating his paid sick leave under section 246, subdivision (l), when it should have classified him as a "nonexempt employee" and thus used a different calculation method. Charter argues that Hirdman was an "exempt employee" as an outside salesperson who was exempt from overtime compensation requirements. (§ 1171.) The trial court agreed with Charter and thus granted its motion for summary adjudication, ultimately entering judgment in its favor.

Reviewing the issue de novo, we agree with the trial court that the statutory language is unambiguous, and section 246, subdivision (l)(3) applies to exempt outside salespersons like Hirdman. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Hirdman sued Charter in October 2019, asserting a single cause of action for civil penalties under PAGA based on alleged violations of sections 246 (failure to pay sick time at the correct rate of pay), 201 to 204 (failure to timely pay wages upon termination), and 2802 (failure to reimburse necessary work-related expenses). In September 2020, Hirdman filed his first amended complaint against Charter, asserting the same cause of action and clarifying that he sought to represent other commissioned employees in his PAGA action. In February 2023, the parties filed cross-motions for summary adjudication on the issue of Charter's alleged failure to pay sick time at the correct rate of pay.

2

The relevant statute, section 246, subdivision (l), provides three methods by which employers may calculate paid sick leave. For "nonexempt employees," employers must calculate paid sick time either "in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time" (§ 246, subd. (l)(1)) or "by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment" (*id.*, subd. (l)(2)). For "exempt employees," paid sick time "shall be calculated in the same manner as the employer calculates wages for other forms of paid leave time." (*Id.*, subd. (l)(3).) The statute does not define "exempt employees" or "nonexempt employees." The parties asked the trial court to determine, as a matter of law, whether section 246, subdivision (l)(3) applies to employees like Hirdman who are classified as outside salespersons.

The material facts upon which the parties based their cross-motions are undisputed. Charter employed Hirdman as a sales representative, and it classified him as exempt from overtime requirements under the outside salesperson exemption (§ 1171). During the relevant period, Charter calculated and paid sick leave to Hirdman and other outside salespersons per the method in section 246, subdivision (l)(3)—at the same rate as other forms of paid time off. Charter thus paid sick leave for each outside salesperson at their hourly base rate of pay, which excluded commissions. Charter did not calculate paid sick leave for its outside salespersons using the methods provided in section 246, subdivisions (l)(1) or (l)(2).

In his motion for summary adjudication, Hirdman contended that employers cannot calculate paid sick leave using the method provided in Labor Code section 246, subdivision (l)(3) for outside salespersons because the meaning of "exempt employees" includes only those employees who are

3

exempt under the administrative, executive, or professional exemptions. (Lab. Code, § 515, subd. (a); Cal. Code Regs., tit. 8, § 11040.)  He argued that although he and other outside salespersons are classified as "exempt" for purposes of overtime and minimum wages, they are *not* "exempt" for purposes of Labor Code section 246.  In support, Hirdman relied on (1) an analysis of the bill from the Senate Committee on Labor and Industrial Relations, and (2) an October 2016 Division of Labor Standards and Enforcement (DLSE) opinion letter based on that report, which concluded that employees like Hirdman and other outside salespersons paid by commissions must be paid for sick leave per Labor Code section 246, subdivision (l)(1) or (l)(2).  Hirdman thus argued that Charter was required to calculate paid sick leave for its outside salespersons using one of the methods in Labor Code section 246, subdivisions (l)(1) and (l)(2), which apply to "nonexempt employees."

Charter, on the other hand, argued that section 246, subdivision (l)(3) applies to all exempt employees, not just those employees classified as exempt under the administrative, executive, or professional exemptions. According to Charter, the statutory language was plain and unambiguous, and the trial court should therefore end its inquiry there because the plain meaning of the word "exempt" controls.  In other words, "exempt employees" in section 246, subdivision (l)(3) means employees like Hirdman who are exempt under any exemption, including the outside salesperson exemption. Charter thus argued that it correctly calculated paid sick leave for Hirdman and other outside salespersons.

The trial court issued a tentative decision granting Charter's motion and denying Hirdman's motion.  After a hearing on the cross-motions, the court adopted its written tentative in full, granting Charter's motion.  The

4

court found no ambiguity in section 246, subdivision (l) that would require it to consider extrinsic materials to aid in its interpretation of the statute. It ruled that the plain meaning of "exempt employees" in section 246, subdivision (l)(3) includes employees like Hirdman who are exempt under the outside salesperson exemption for purposes of overtime and minimum wages, and Charter therefore properly calculated and paid sick leave in the same manner it calculated wages for other forms of paid leave.

After the trial court granted Charter's motion for summary adjudication, the parties stipulated to Hirdman's filing of a second amended complaint, which removed his allegations relating to Charter's alleged failure to reimburse necessary work-related expenses. Following amendment, the only remaining theory in the case was that Charter failed to pay sick time at the correct rate of pay. Because the trial court had already granted summary judgment as to that claim, Charter lodged a proposed judgment, which the trial court entered in February 2024.

## DISCUSSION

The Healthy Workplaces, Healthy Families Act of 2014 (the Act) (§ 245 et seq.) requires California employers to provide paid sick leave to their employees. The Legislature's express intent in enacting the law was to: ensure that workers can address their own health needs and the health needs of their families; decrease health care costs by enabling workers to seek early and routine medical care for themselves and their family members; protect employees from losing their jobs while they use sick days to care for themselves or their families; provide economic security to employees who take time off from work for reasons related to domestic violence or sexual assault; and safeguard the welfare, health, safety, and prosperity of the people of and visitors to California. (Assem. Bill No. 1522 (2013–2014 Reg.

5

Sess.); Stats. 2014, ch. 317, §§ 1, 2.) The Legislature amended the statute the year after it was enacted and added, among other provisions, methods by which employers are permitted to calculate paid sick leave. (Assem. Bill No. 304 (2015–2016 Reg. Sess.); Stats. 2015, ch. 67, § 2.)

As noted, section 246, subdivision (l) provides three methods employers may use to calculate the rate of pay for sick leave—two options for "nonexempt employees" and one for "exempt employees." For "nonexempt employees," sick pay "shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek" or "by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment." (§ 246, subd. (l)(1), (2).) For "exempt employees," the statute directs paid sick time to "be calculated in the same manner as the employer calculates wages for other forms of paid leave time." (*Id.*, subd. (l)(3).)

The sole issue for determination on appeal is the meaning of the phrase "exempt employees" as used in section 246, subdivision (l)(3). Hirdman contends that the trial court improperly ignored the legislative history of section 246 and misinterpreted the statute when it found that "exempt employees" includes employees, like him, who are exempt for purposes of overtime and minimum wages as outside salespersons. (See Cal. Code Regs., tit. 8, § 11070, subd. 2(J) [employees are properly classified as "exempt outside salespersons" if they "customarily and regularly work[] more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities"]; Lab. Code, § 1171 [outside salespersons are

6

exempt from Labor Code's requirements regarding minimum wage, overtime, and meal and rest breaks]; see also *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794, 800 [referring to this as the "outside salesperson exemption"].) Hirdman relies on an analysis done by the Senate Committee on Labor and Industrial Relations before the Act was passed, as well as a DLSE opinion letter that, citing the Senate Committee analysis, concluded that outside salespersons were "nonexempt employees" for purposes of section 246.

Charter contends the court correctly found that "exempt employees" means all employees exempt from overtime compensation requirements—not only those who are exempt under the administrative, executive, or professional exemptions. According to Charter, because the statutory language contains no ambiguity, we should not consider the legislative history or other extrinsic materials to determine the Legislature's intent. Charter further argues that even if it were proper to consider the extrinsic materials relied upon by Hirdman, the legislative history does not support Hirdman's interpretation of the statute, and the DLSE opinion letter is neither persuasive nor binding. We agree with Charter.[2]

In reviewing the trial court's order granting summary adjudication of this issue, we apply the same standards we would in reviewing an order granting summary judgment. (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471; Code Civ. Proc., § 437c, subds. (c) & (f).) We conduct

---

[2] We deny Charter's request for judicial notice of the legislative history of section 246. The documents were all referred to in the trial court and are already part of the appellate record, making judicial notice unnecessary. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 631–632, fn. 11.)

a de novo review of this purely legal issue of statutory interpretation. (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1376.)

Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate its purpose. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.) We "look first to the words of the statute, which are the most reliable indications of the Legislature's intent." (*Ibid.*) We do not construe those words in a vacuum but rather consider them in the context of the statutory framework as a whole. (*Ibid.*) If the statutory language is unambiguous, then its plain meaning controls. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83.) If, however, the language supports more than one reasonable construction, then we may look to extrinsic materials, including the legislative history. (*Ibid.*)

We thus start with the statutory language and framework. The Act does not define the terms "exempt employees" and "nonexempt employees." California courts, however, consistently use the phrase "exempt employees" in the private employment context to mean those not entitled to overtime wages under California wage and hour law. (See, e.g., *Harris v. Superior Court* (2011) 53 Cal.4th 170, 175 ["This litigation tests whether certain insurance company claims adjusters are *exempt employees, not entitled to overtime compensation* under the Labor Code and regulations of California's Industrial Welfare Commission (IWC or Commission)." (Italics added.)]; *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1228 ["[This] is one of several lawsuits filed by appellants' counsel against respondent on behalf of [area sales managers] who were classified as 'exempt' employees, and thus not paid overtime wages . . . ."]; *McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 267 ["And, as exempt employees,

8

area managers were not subject to overtime . . . ."].)  The term "exempt employees" can therefore be considered a term of art in this context.  When the Legislature uses a term of art, we " 'must assume that the Legislature was aware of the ramifications of its choice of language.' "  (*Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 850, fn. 3 [concluding that "the term 'wrongful death' has a well-established meaning" and there was no indication the Legislature intended to depart from that meaning in the statute at issue]; see also *Brown v. Superior Court* (2016) 63 Cal.4th 335, 351 ["when a word or phrase appearing in a statute 'has a well-established *legal* meaning, it will be given that meaning in construing the statute' "]; *Texas Commerce Bank v. Garamendi* (1992) 11 Cal.App.4th 460, 475 [unless a contrary intention is "clearly indicated by the statute," courts will presume the Legislature intended terms of art to convey "their established legal or technical meanings"].)

We also presume that if the Legislature intended to limit the definition of "exempt employees" in section 246, subdivision (l)(3) to only those persons exempt from overtime as administrative, executive, and professional employees, it would have said so.  (See *In re N.R.* (2023) 15 Cal.5th 520, 553 ["[W]e believe that had the Legislature intended to require a medical diagnosis of substance abuse [in the statutory scheme at issue], it would have said so."].)  In construing a statute, courts are not authorized to insert qualifying language that is not included in its text.  (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 551.)

Notably, the Legislature did carve out precisely such a limitation in a different subdivision of the same section—section 246, subdivision (b)(2) provides that "[a]n employee *who is exempt from overtime requirements as an administrative, executive, or professional employee* under a wage order of the

9

Industrial Welfare Commission is deemed to work 40 hours per workweek for the purposes of this section, unless the employee's normal workweek is less than 40 hours, in which case the employee shall accrue paid sick days based upon that normal workweek." (Italics added.) The Legislature thus knew how to carve out a subset of the commonly understood legal term "exempt employee" and chose not to do so in subdivision (l)(3). (See *In re N.R., supra*, 15 Cal.5th at p. 553; *In re Jennings* (2004) 34 Cal.4th 254, 273 ["Because the wording of these statutes shows the Legislature, if it wishes, knows how to express its intent that knowledge be an element of an offense, the absence of such a requirement . . . indicates it intended no such requirement."].)

Hirdman asserts that we must read subdivisions (b) and (l) "in harmony," and that it is "apparent that the language found in section 246, subdivision (b)(2) expressly limiting 'exempt' employees to the administrative, executive, or professional exemptions was intended to apply throughout all of Labor Code section 246." We agree with his premise but not his conclusion. "[W]hen different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended." (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343; see also *In re Jennings, supra*, 34 Cal.4th at p. 273 [" 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' "].) We therefore infer from the Legislature's use of different phrases within the same section—"exempt from overtime requirements as an administrative, executive, or professional employee" versus "exempt

employees" (§ 246, subds. (b) & (l))—that it intended the phrases to mean different things.

Hirdman contends that our interpretation of the statute will allow employers to pay their outside salespersons nothing when they take sick leave by eliminating all paid leave. This hypothetical set of facts is not before us, however, because it is undisputed that Charter provided other forms of paid leave to Hirdman and calculated and paid his sick leave in the same manner as other forms of paid leave. "The inquiry into ambiguity is focused, asking only whether the text is ambiguous in its application to the facts of the case, not whether the text is ambiguous in the abstract." (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 336.) Under the facts of this case, we conclude that the statutory language is unambiguous, and "exempt employees" includes employees like Hirdman who are exempt from overtime wages.

In light of our conclusion that section 246, subdivision (l)(3) is not ambiguous, we could end our inquiry here, as there is no need to resort to other indications of legislative intent. (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 ["If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent."].) But because the DLSE has issued an opinion letter relying on the legislative history to reach a contrary conclusion, we address it here.

Hirdman contends that the analysis by the Senate Committee on Labor and Industrial Relations regarding Assembly Bill No. 304 demonstrates that the Legislature intended the term "exempt employees" in section 246, subdivision (l)(3) to apply only to individuals exempt as administrative, executive, or professional employees, and that it intended outside salespersons to be categorized as "nonexempt employees" for purposes of paid

11

sick leave.  (See Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 304 (2015–2016 Reg. Sess.) as amended June 22, 2015, p. 4.) In an opinion letter written by an attorney for the Labor Commissioner in October 2016, the DLSE arrived at the same conclusion.

We are not persuaded.  First, the committee report upon which Hirdman relies is itself subject to conflicting interpretations.  In a general description of the bill's provisions, the report stated that "[p]aid sick time for exempt employees shall be calculated in the same manner as the employer calculates wages for other forms of paid leave time."  (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 304 (2015–2016 Reg. Sess.) as amended June 22, 2015, p. 3.)  This description is consistent with the plain language of the statute—making no distinction between different types of exempt employees.  But in another section entitled "Remaining Concerns," the report stated that "[p]aid sick time for exempt employees (*exempt as an administrative, executive, or professional employee under a wage order of the Industrial Welfare Commission*) shall be calculated in the same manner as the employer calculates wages for other forms of paid leave time."  (*Id.* at p. 4.)  But the main point of this section on remaining concerns was that outside salespersons could "game the system" if their sick leave were calculated under subdivision (l)(2) because they could time their sick days to follow a 90-day period when their commission income was particularly high.  Moreover, the parenthetical language relied on by Hirdman is the only suggestion in any of the legislative committee reports that the term "exempt employees" in relation to the calculation of paid sick leave may be limited to employees classified under the administrative, executive, or professional exemptions.  All of the other reports—from the Assembly Committee on Labor and Employment, Assembly Committee on

12

Appropriations, Assembly Third Reading, and Senate Rules Committee—either state generally that sick time for "exempt employees" shall be calculated in the same manner as other forms of paid leave or do not reference the term at all. Nor does the Legislative Counsel's Digest suggest that application of the term "exempt employees" in relation to the calculation of paid sick leave is limited to employees classified under the administrative, executive, or professional exemptions.

Although we may properly rely on committee reports as indicia of legislative intent, "they are certainly not conclusive." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 508.) This is particularly true where only a single ambiguous parenthetical in a single committee report supports the interpretation urged by a party and other language in the same report and others does not. As is well established, " '[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.' " (*Martinez v. Regents of University of California* (2010) 50 Cal.4th 1277, 1293 (*Martinez*); see also *People v. Boyd* (1979) 24 Cal.3d 285, 295 ["When the legislative history gives rise to conflicting inferences, it does not justify departing from the plain language of the statute"].) In short, "[s]ection [246]'s actual language prevails, not the committee report's." (*Martinez*, at p. 1293.)

The DLSE's reliance on this single parenthetical from a single legislative committee report in an opinion letter does not persuade us otherwise. Hirdman argues that the "DLSE's conclusions carry persuasive weight and should be followed," and that its "opinion letters 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' (*Brinker Rest. Corp. v. Superior Court* (2012) 53

Cal.4th 100[4], 1029 [f]n. 11 [(*Brinker*)].)" That may be true when courts are interpreting IWC wage orders, but neither *Brinker* nor any of the cases it cites for this proposition look to DLSE opinion letters for guidance on *legislative intent.* (See *Brinker*, at pp. 1028–1029 [interpreting IWC Wage Order No. 5]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 580–581, 584 [interpreting IWC Wage Order No. 14-80]; *Seymore v. Metson Marine, Inc.* (2011) 194 Cal.App.4th 361, 369 [interpreting IWC Wage Order No. 1-89].) This is unsurprising, as it "is the function of the judiciary, not an administrative agency, to construe statutory language." (*Wolski v. Fremont Investment & Loan* (2005) 127 Cal.App.4th 347, 357.) So "while it is true that there are instances when courts may look to the interpretation of an agency as one of several tools to determine the meaning of a statute, in the end, '[we] must . . . independently judge the text of the statute.' " (*State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 451 (*Unumprovident Corp.*).)

Moreover, the October 2016 DLSE opinion letter specifically states that the "opinion is based exclusively on the facts and circumstances described" in the request submitted to it, and the "existence of any other factual or historical background" might compel a different conclusion. Indeed, the DLSE Enforcement Policies and Interpretations Manual, which "summarizes the policies and interpretations which DLSE has followed and continues to follow in discharging its duty to administer and enforce the labor statutes and regulations of the State of California," does not include the interpretation of "exempt employees" in section 246 that Hirdman urges us to adopt. (See DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (Aug. 2019), § 30.2 <https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf> [as of July

14

29, 2025], archived at <https://perma.cc/Y4G2-R3CE> (DLSE Manual).) Rather, it provides only that "[p]aid sick leave for an exempt employee is calculated in the same manner the employer calculates wages for other forms of paid leave time." Where, as here, the agency in question "does not have a long-standing interpretation of the statute and has not adopted a formal regulation interpreting the statute, the courts may simply disregard the opinion offered by the agency." (*Unumprovident Corp., supra*, 140 Cal.App.4th at p. 451.) Accordingly, we are not persuaded by Hirdman's reliance on the DLSE opinion letter.

In sum, we conclude that the trial court correctly determined that section 246, subdivision (l)(3) applies to outside salespersons like Hirdman and thus did not err in granting summary adjudication in favor of Charter.

DISPOSITION

The judgment is affirmed. Charter is entitled to its costs on appeal.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.

15